(89 South. 198)

**McDONALD et al. v. McALILY et al.**
**(4 Div. 907.)**

(Supreme Court of Alabama. April 21, 1921. Rehearing Denied May 19, 1921.)

**1. Homestead ⬅️150(2)—Competency of petitioner held immaterial to person whose title to land was cut off thereby.**

Person whose title was thereby cut off cannot complain of an order setting aside a homestead to widow upon her petition, filed by reason of a deception practiced upon her by third person, resulting in her unintended assertion of a legal right, the fraud or deception being no concern of theirs.

**2. Homestead ⬅️150(2)—No relief from fraud in absence of damage.**

Fraud without damage is not a cause of action at law or a ground of relief in equity, and hence a widow obtaining an order setting aside a homestead upon her petition cannot have the order set aside on the ground that she was deceived and made a petitioner without her real consent, the deception benefiting and not injuring her.

**3. Homestead ⬅️150(2)—Decree setting aside homestead not set aside for false statement as to value.**

False statements made by widow in affidavit as to value of homestead and general estate left by decedent cannot constitute such fraud as to authorize the annulment of the decree setting aside the homestead.

**4. Judgment ⬅️282—Clerk of probate may sign decree for judge.**

Decree setting aside a homestead may be signed by the chief clerk, having been rendered by the probate court, the actual signing being ministerial, under Code 1907, § 5430, subd. 6.

**5. Homestead ⬅️150(2) — Heirs must be watchful of right, and cannot attack decrees regular on face.**

Statutes providing for allotment of homestead exemption without notice to heirs or next of kin who are interested in decedent's estate, in effect, require such persons to be watchful of their right, and keep up with all proceedings in probate court by which their rights may be affected, and, failing to intervene and file their objections and exceptions to a homestead allotment, as required by the statutes, they are without recourse if the proceedings and decree are regular on their face, and in accordance with the statutory provisions which govern them, and if the decree is not procured by some fraud extrinsic or collateral to the matters in issue.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Bill by Mollie McDonald and others against A. L. McAlily and others, to annul a decree of the probate court and to cancel a deed. From a decree sustaining demurrers to the bill, complainants appeal. Affirmed.

The bill was filed December 19, 1919, by the next of kin, of T. J. Dickson, who died in June, 1918, to set aside an order and decree of the probate court of Geneva county, entered on January 11, 1919, setting aside to S. A. Dickson, surviving widow of T. J. Dickson, the homestead of the decedent, as being not in excess in value and arrear of the exemptions allowed by law, and vesting the title thereto absolutely in the said widow. The bill seeks incidentally to cancel the deed to said homestead, executed by the said widow to the respondent McAlily on January 27, 1919. The gravamen of the bill is the alleged fraud of the said McAlily, who married a niece of the decedent, and thereby occupied a position of great influence over Mrs. Dickson, and who, having determined to obtain the land for himself, in fraud of Mrs. Dickson and these complainants, and having consulted counsel and been advised as to the law governing homestead allotments, employed counsel to prepare a proper petition and conduct the proceedings to a decree. The bill concedes that the petition, proceedings, and decree were in due form, and upon their face operated to vest in the nominal petitioner, Mrs. Dickson, the fee-simple title for the homestead. In support of the charges of fraud, the bill alleges the following in paragraph 5:

"That the said S. A. Dickson had been very feeble and in bad health, and was old and infirm, and incapable of performing business transactions, or incapable of taking steps in any court proceeding, or of looking after or protecting her rights in and to said property; that she was ignorant, uninformed, unable to read or write, and did not know or understand the nature of the petition presented to her, and did not know or understand that in fact its purpose was to vest in her the legal title to all the lands in question. The complainants aver that the said McAlily, at the time, well knew her condition, and well knew her incapacity to appreciate and understand the nature of the ac-

.tion he was asking her to perform, and with such knowledge and with the intent and purpose to benefit himself and to defraud the said S. A. Dickson, and these complainants purposely procured her signature by mark to a petition, the purpose of which has been stated, the said S. A. Dickson, not knowing its contents or its effect. Moreover the complainants charge that said petition was false, in that the land in question was worth at least $5,000 at the date of the death of Dickson, and at the time of the signing of the petition, some of it being well timbered, all of which was well known to the said McAlily and the said widow, * * * that it was not the purpose or intent of * * * S. A. Dickson to file in the probate court a petition such as was filed, or any petition whose purpose was to vest in her the legal title to the lands in question, or any right therein, to the exclusion of the rights of these complainants in and to the same, and therefore she signed no such petition, and her alleged or purported signature thereto was procured in the manner and form stated for a fraudulent purpose and design on the part of the said McAlily, who conducted for her and in her name, the proceedings throughout of which, and the effect of which, she was wholly ignorant."

It is further charged that said McAlily, pursuing his scheme to defraud, filed said petition without any authority from Mrs. Dickson; that one of the commissioners appointed by the court could not sign his name; that they signed a report prepared at the instance of McAlily valuing the land at $2,000; and that the court made its decree without further proof in the matter. It is further alleged that the decree in question was signed by the chief clerk of the probate office in the name of the probate judge; that the clerk was without legal authority to do so, and that for that reason the decree is void. The demurrers to the bill, original and amended, challenge it for want of equity and for the insufficiency of its allegation to show fraud in the procurement of the decree or to show its validity for any reason.

W. O. Mulkey and J. W. Howell, both of Geneva, for appellants.

. A court of equity has jurisdiction to relieve against fraud in judicial proceedings. 204 Ala. 133, 85 South. 799, and cases cited. The proceedings are in rem, and the decree does not estop the complainants. 103 Ala. 614, 15 South. 897. A decree procured by perjury will be set aside at the instance of a person at interest. 138 Wis. 260, 119 N. W. 865, 19 L. R. A. (N. S.) 1080; 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870; (D C.) 180 Fed. 144.

Carmichael & Son, of Geneva, for appellees.

. If Mrs. Dickson could not attack the probate proceeding, certainly the present complainants cannot. No fiduciary relation is shown. 19 Cyc. 526; 8 Cyc. 564. The fraud is not well pleaded. 16 Cyc. 231; 20 Cyc. 97, 98; 135 Ala. 302, 33 South. 659; 3 Ala. 352; 56 Ala. 340; 52 Ala. 282; 58 Ala. 617; 69 Ala. 40. There was no equity in the bill. 201 Ala. 226, 77 South. 752; 186 Ala. 310, 65 South. 209; 188 Ala. 667, 65 South. 988; 194 Ala. 537, 69 South. 948; 114 Ala. 630, 21 South. 534; 114 Ala. 551, 21 South. 490, 62 Am. St. Rep. 133; 170 Ala. 362, 54 South. 172.

SOMERVILLE, J. An analysis of the bill of complaint shows that complainants rely upon four distinct grounds as bases for the nullification of the decree of the probate court allotting a homestead in fee simple to the widow, Mrs. S. A. Dickson:.

(1) A fraud was practiced on the widow herself, in that she was persuaded to lend the use of her name as petitioner in a proceeding, the nature of which she was too ignorant or feeble-minded to understand, and leading to the appropriation to herself in fee-simple of property which she did not wish nor intend to take from these complainants, to whom it would have otherwise descended.

(2) A fraud was practiced on the court in thus presenting as a bona fide petitioner one who was not so in fact.

(3) A fraud was practiced on the court, and likewise on complainants, in that the petitioner, or her agent McAlily, knowingly and intentionally included in the sworn petition the false statement that the decedent's homestead was not worth in excess of $2,000.

(4) The decree, though rendered by the probate court, is invalid, because it was not signed by the probate judge, but by the chief clerk in his name.

[1] 1. It is difficult to find any plausible support for the theory that these complainants, as next of kin of the decedent, have been injured in any legal sense by any deception practiced on the widow and resulting in her unintended assertion of a legal right. It is true that the effect of McAlily's alleged deception and intervention was to set in motion a legal proceeding which cut off a title otherwise vested in complainants. But there was no wrong to complainants in the initiation and prosecution of the widow's claim of homestead; and whether the petitioning widow understood its purpose or anticipated and desired its fruits is no concern of theirs, and they are manifestly not in a position to question the policy of the proceeding or the competency of the petitioner, or the authority and good faith of her assisting agent.

[2] And indeed, if this bill of complaint had been filed by the widow herself, it is not apparent upon what principle of equity it could be maintained. If she was deceived and made a petitioner without her real consent, the deception benefited, not injured her.

"Fraud without damage is not a cause of action at law, or a ground of relief in equity. It

is only when the two meet and concur that courts intervene." Bishop v. Wood, 59 Ala. 253, 259.

2. It has been held that a judgment in personam may be set aside at the suit of the plaintiff on the ground that the suit was brought by an attorney who was not authorized to do so. Smyth v. Balch, 40 N. H. 363; Latimer v. Latimer, 22 S. C. 257; Lillibridge v. Ross, 59 Mo. 217. This is, of course, on the theory that such a judgment is a fraud upon the plaintiff, and is in some way injurious to him. But we are clear to the conclusion that that principle of relief, even at the suit of the plaintiff, is not applicable to such a proceeding as this, in rem and ex parte, when the widow so entitled has actually signed the petition which initiated the proceeding, and made oath to the truth of its allegations, for the purpose of asserting some sort of statutory right to the homestead, even though she did not understand its nature or effect, and that is all that this bill can be construed as averring. A fortiori, third persons, though their rights as heirs may be incidentally affected, cannot question the petitioner's want of understanding and intent in a collateral attack on the decree, whether as a fraud on themselves or as a fraud on the court.

To allow any one other than the plaintiff or petitioner to come in and question in an independent proceeding the intention of such plaintiff or petitioner with respect to his initiation and prosecution of the cause—in short, to contradict the showing of the record that he was before the court as actor—would, we think, be destructive of the stability and value of judgments, and would be unsound in policy and injurious in results.

[3] 3. It has been definitely settled by this court that false statements made by the petitioner in his affidavit as to the value of the homestead and of the general estate left by the decedent cannot constitute such fraud as to authorize the annulment of the decree. Douglas v. Bishop, 201 Ala. 226, 77 South. 752; Hanley v. Hanley, 114 Cal. 690, 46 Pac. 736.

[4] 4. The bill shows that the decree in question was rendered by the probate court. The signing of the decree by the probate judge was ministerial merely, and there is no statute or rule of law requiring the personal signature of the probate judge in such matters. On the contrary, the authority of the chief clerk to do such acts in the name of the probate judge is clearly comprehended in the provisions of subdivision 6 of section 5430 of the Code.

[5] The trouble here lies in the statutes which provide for the allotment of a homestead exemption without notice to heirs or next of kin who are interested in the dece-

dent's estate. In effect, those statutes require such persons in interest to be watchful of their rights, and to keep up with all proceedings in the probate court by which their rights may be affected. Failing to do so, and failing to intervene and file their objections and exceptions to the homestead allotment as required by the statutes, they are without recourse, if the proceedings and decree are regular on their face, and in accordance with the statutory provisions which govern them, and if the decree is not procured by some fraud extrinsic or collateral to the matters in issue. Hogan v. Scott, 186 Ala. 310, 65 South. 209.

It is, of course, clear that no fraud practiced by McAlily on Mrs. Dickson, whether in the initiation of the proceeding for allotment, or thereafter in the procurement from her of a deed to the homestead property, can be availed of by these complainants. If by deceit she was induced to assert and secure a valuable right conferred upon her by law, this was not, in any cognizable legal sense, a wrong to them. And if, having secured the homestead so allotted, she was induced by a further and grosser fraud to convey it to McAlily, this also was not a wrong to complainants, who were not of her blood, and could not become her heirs.

Nor could McAlily's design to secure the property for himself, by an ultimate fraud to be practiced on Mrs. Dickson, add any weight or quality to other acts designed to place the title in her, so as to render fraudulent as to complainants what would not be so of its own force and effect.

We are constrained to the conclusion that the bill is without equity, and that the demurrers to the bill, original and as amended, were properly sustained. The decree will therefore be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.